# SUPREME COURT.

STEPHEN V. MOERS agt. MORRO, NEHMEYER, GANS, MOERING, HAINEMAN and MARTENS.

*Appeals* from orders, denying motions to vacate orders of arrest, are not to be encouraged.

The mammoth strike which the six defendants, under an alleged conspiracy and fraudulent representations, made in this case, came to light, and appeared in the following shape:

Two of the defendants, a firm, proposed through a third, who was a broker, to purchase of the plaintiff upon credit, and for alleged foreign shipment, $34,000 worth of seed leaf tobacco. It being represented to the plaintiff by the broker and the fourth defendant, that the firm was worthy of credit, and that the fifth and sixth defendants would discount their notes to the plaintiff for the purchase, to the amount of $20,000.

The plaintiff, before the sale, saw the fifth defendant, who agreed to discount $8,000 of the notes in three or four days. And the sixth defendant also agreed to discount $14,000 of the notes. Upon these representations, the plaintiff agreed to make the sale, and left with the broker the certificates for the tobacco, with directions not to deliver them to the purchasers, unless they paid $6,000

Moors agt. Morro.

in cash, and gave their notes for the residue of $34,000. The broker delivered the certificates to the purchasers, without receiving the notes, and the plaintiff did not procure them until some three weeks afterwards, when the fifth and sixth defendants refused to discount them, for the alleged reason, that too long time had elapsed. During the time, the purchasers had sold the tobacco in New-York for fifty per cent. below what they had agreed to pay for it. The notes, which amounted to $28,000, nor any part of them, at the commencement of the action had been paid.

The court considered that as the defendant had made no opposing affidavits on motion to discharge the order of arrest, it was well to let it stand.

*New-York, General Term, April,* 1859.

*Before* ROOSEVELT, DAVIES *and* CLERKE, *Justices.*

THIS action is brought against all the defendants, charging them with having entered into a conspiracy to defraud the plaintiffs out of a large amount of seed leaf tobacco. An order of arrest was obtained in the action, and the defendants were taken.

It appears by the affidavit that the defendants Morro and Nehmeyer proposed, through the defendant Gans, who was a broker, to purchase tobacco, to the amount in question, of the plaintiff, upon credit; it being represented to the plaintiff, that the tobacco was required for foreign shipment. Morro and Nehmeyer were represented to the plaintiff, by Gans and the defendant Moering, as worthy of credit, and that the defendants Martens and Haineman would discount the notes to be given by them to the plaintiff, for the tobacco, to the amount of $20,000. Before making the sale, the plaintiff called upon Martens, who informed the plaintiff that he would discount $8,000 of the notes of Morro and Nehmeyer, that he " *would be ready to take the notes in three or four days,*" and that plaintiff might depend upon his taking them within that time. The plaintiff called upon defendant Haineman, who assured plaintiff that he would discount about $14,000 of Morro and Nehmeyer's notes.

The plaintiff had been referred to Martens and Haineman, by Gans and Moering. Upon these representations, plaintiff agreed to make the sale, and on the 17th of March, 1858, delivered to defendant Gans the certificates for the tobacco, with

directions not to deliver them to Morro and Nehmeyer, unless they paid $6,000 in cash, and gave their notes for the residue of the purchase money. The whole amount of the tobacco was $34,000.

Gans did deliver the certificates for the tobacco to Morro and Nehmeyer, *without receiving the notes.* Plaintiff called frequently for the notes, but was unable to obtain them, until the 31st day of March ; they making various excuses for the nondelivery. In the mean time, Morro and Nehmeyer had sold the tobacco in *New-York,* at a sum nearly fifty per cent. below what they had agreed to pay plaintiff for same.

After plaintiff received the notes for the tobacco, he called upon Martens to discount $8,000 of the amount, who declined to do so, alleging as a reason, that nearly *three weeks had elapsed since he had promised to discount them.*

The affidavit charges, that Morro and Nehmeyer had purposely withheld the notes from plaintiff, in order to give Martens and Haineman an excuse for refusing to discount them. Morro and Nehmeyer were alleged to be insolvent at the time of the purchase ; that both Martens and Haineman knew of this insolvency ; that Martens was a creditor of M. & N., to a considerable amount. That the scheme to purchase the tobacco, and represent that said Morro and Nehmeyer had an order therefor for export, and that said Martens and Haineman would discount twenty thousand dollars of the promissory notes of said M. & N. given in payment for said tobacco, was concocted by said *defendants, and each of them was privy thereto,* for the purpose of cheating and defrauding the plaintiff, and in pursuance of a wicked and unlawful combination to swindle the plaintiff out of said tobacco. The notes held by plaintiff at the time the action commenced amounted to $28,000, neither of which had been paid.

A motion was made at special term, on the behalf of all the defendants, to vacate the order of arrest. Defendants made no opposing affidavit. The motion was denied, and the defendant Martens appealed to the general term.

HOOPER C. VAN VORST, *for plaintiff*.
JOHN A. FOSTER, *for defendant Martens*.

By the court—DAVIES, Justice. In this case an order of arrest was granted by one of the justices of this court, by which all of the defendants have been arrested. On a motion on their behalf, to discharge the order of arrest, the same was denied. This motion was founded solely on the affidavits on the part of the plaintiff, without any denial or counter affidavits on the part of the defendants, or either of them. From this order, the defendant Martens alone has appealed.

We do not think appeals from orders of this character, are to be encouraged. The order of arrest is a provisional remedy, not affecting the merits of the case, and when the party is on bail, he cannot be seriously prejudiced by its remaining in force until the final termination of the action.

The attention of the court has already twice been called to these facts, once on granting the order, and the second time on the motion to vacate it. Two adjudications have, therefore, already been had, that a *prima facie* case has been made out for the arrest of all the defendants, and the facts found by the court below, necessary to sustain these adjudications on an appeal, are to be deemed as established, unless the contrary can be clearly pointed out. We are not prepared to say that the learned justice who heard the motion and granted the order has found facts not warranted by the evidence before him.

It is charged in the affidavits, and not denied, that a conspiracy to cheat and defraud the plaintiff was formed by all the defendants; that each did certain acts, as part of the general scheme, having that object in view, and the acts and declarations of each defendant, in thus aiding and carrying out the general scheme, are particularly detailed. The actual conspiracy, being charged and not denied, is to be assumed to be established. Each of the defendants is deemed, in law, a party to all acts done by any of the other parties, in furtherance of the common design. (3 *Greenleaf's Ev.* § 93.) And the acts

and declarations of the other conspirators are admitted as evidence against each, upon the principle that, by the act of conspiring together, they have jointly assumed to themselves as a body the attribute of individuality, so far as regards the prosecution of the common design ; that rendering whatever is done or said by any one, in furtherance of that design, a part of the *res gestœ*, and therefore the act of all. It is the same principle of identity with each other that governs in regard to the acts and admissions of agents, when offered in evidence against their principals, and of partners against the partnership. (3 *Greenleaf's Ev.* § 94.)

In the affidavits before us, it is alleged, and not denied, that Martens, at the time he agreed to discount and pay cash for the notes of Morro and Nehmeyer, for the tobacco to be sold to them by plaintiff, and on the faith of which the plaintiff let them have the tobacco, " well knew that said firm of Morro and Nehmeyer was insolvent, and that judgment had been obtained against them, and that said firm had no credit whatever," and that at the time said firm of Morro and Nehmeyer was indebted to Martens ; that he was intimately acquainted with the business and transactions of said firm, and then claimed to own all the property there in the possession of said firm, and that he made the representations stated, with the design to cheat and defraud the plaintiff, and with the design to get said tobacco into the possession and under the control of Morro and Nehmeyer, that he might by means thereof succeed in realizing the amount due to him from said firm.

With these statements uncontradicted before the justice at special term, we are not surprised that he refused to vacate the order of arrest. We think such refusal to be correct, and the order appealed from is affirmed with costs.